LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs, Nationwide FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAI GUO and WEI CHEN *on behalf of themselves, Nationwide FLSA Collective Plaintiffs and the Class*, | Case No.: |
| Plaintiffs, | |
| v. | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| CENTENE CORPORATION, CENTENE MANAGEMENT COMPANY LLC, WELLCARE HEALTH PLANS, INC., and COMPREHENSIVE HEALTH MANAGEMENT, INC., | Jury Trial Demanded |
| Defendants. | |

Plaintiffs CAI GUO and WEI CHEN ("Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, CENTENE CORPORATION, CENTENE MANAGEMENT COMPANY LLC, WELLCARE HEALTH PLANS, INC., and COMPREHENSIVE HEALTH MANAGEMENT, INC., (collectively "Defendants" or "Centene"), and state as follows:

## INTRODUCTION

1.      Plaintiffs CAI GUO and WEI CHEN allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) unpaid overtime compensation, (3) liquidated damages and (4) attorneys' fees and costs.

2.      Plaintiff WEI CHEN alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) unpaid overtime compensation, (3) statutory penalties, (4) liquidated damages and (5) attorneys' fees and costs.

3.      Plaintiffs WEI CHEN alleges that he and others similarly situated are entitled to recover from Defendants damages due to Defendants: (1) breach of contract, (2) negligent misrepresentation, (3) promissory fraud, and (5) unjust enrichment.

4.      Defendants operate a leading healthcare enterprise selling healthcare insurance products to individuals and families across the country.  Defendants supply healthcare products to 1 in 15 Americans across all 50 U.S. states. *See* **Exhibit A**, Press Release of Defendants.

5.      Plaintiffs and potential class members were all victims of Defendants' scheme to underpay employees and avoid paying overtime.  Defendants impermissibly induced extensive off-the-clock work with a policy of instituting excessive quotas on employees, which required overtime hours to complete.  At the same time, Defendants maintained a procedure for requesting overtime requiring an employee to subject themselves to a productivity review and possible reprimand/termination.  Moreover, employees of Defendants paid on commission were also victims of what is referred to as the "Open Enrollment Scandal" occurring in 2020.  Defendants induced higher sales by distributing emails and paperwork promising higher

commission rates than were actually delivered to employees.   Plaintiffs bring this wage and hour class action on behalf of themselves and all persons, who during the applicable limitations period up to and including the present, were similarly underpaid by Defendants in violation of protections afforded under the FLSA, parties' contracts, laws of equity, and the laws and regulations passed in the District of Columbia and the following states:

1) Alaska: Alaska Wage and Hour Act, Alaska Statute §23.10.050 *et seq.*;

2) Arizona: Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-340 *et seq.*, and the Arizona Minimum Wage Act Practice and Procedure A.A.C. R20-5-1201 *et seq.*;

3) Arkansas: Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.*;

4) California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

5) Colorado: Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.,* and the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101 *et seq.*;

6) Connecticut: Connecticut Wage Act Conn. Gen. Stat. §§31-58, *et seq.*;

7) Delaware: Delaware Minim Wage Law, Delaware Code Title 19-90 *et seq.*;

8) District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;

9) Florida: Florida's Unpaid Wages Statute, Fla. Stat. 448.08 *et seq.*;

10) Georgia: Georgia Minimum Wage Law, Official Code of Georgia Annotated O.C.G.A. § 34-4 *et seq.*;

11) Hawaii: Hawaii Payment of Wages and other Compensation, Hawaii Revised Statutes Title 21 § *388-1 et seq.;*

12) Idaho: Idaho the Minimum Wage Law 44-1501 *et seq.*, Hours Worked Act §44-1201 *et seq.*, and the Liens, Mortgages and Pledges, Idaho Code § 45-601 *et seq.*;

13) Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;

14) Indiana: Indiana Wages Hours and Benefits, Ind. Code §22-2-2 *et seq.* Indiana Frequency of Wage Payments Ind. Code §22-2-5 *et seq.*;

15) Iowa: Iowa Wage Payment Collection Law, Iowa Code §91A *et seq.*;

16) Kansas: Kansas Labor and Industries Law, Kan. Stat. Ann. §44-1201 *et seq.*;

17) Kentucky: Kentucky Wage Statutes, K.Y. Rev. Stat. Ann. §§ 337.275 *et seq.*;

18) Louisiana: Louisiana's Wage Payment Act, Louisiana Revised Statutes §23:631 *et seq.*;

19) Maine: Maine Employment Practices Act, 26 Me. Rev. Stat. §§ 621-A, 626, 626-A, & 629, and the Maine Minimum Wage and Overtime Law, 26 Me. Rev. Stat. §§ 664 & 670;

20) Maryland: Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment Collection Law, Lab. & Empl. § 3-501 *et seq.*;

21) Massachusetts: Massachusetts Minimum Fair Wage Law, Mass. Gen. L. ch. 151, §1A *et seq.*;

22) Michigan: Michigan Workforce Opportunity Wage Act, MCL §§ 408.411, *et seq.*;

23) Minnesota: Minnesota Fair Labor Standards Act, Minn. Stat. § 177.25, and the Minnesota Payment of Wages Act, Minn. Stat. § 181.101 *et seq.*;

24) Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;

25) Montana: Montana Minimum Wage and Overtime Compensation Act, MCA § 39-3-401 et seq., and the Montana Payment of Wages Law, MCA §39-3-201 *et seq.*;

26) Nebraska: Nebraska's Wage and Hour Act, Neb. Rev. Stat. § 48-1201 *et seq.*, and the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.*;

27) Nevada: Nevada Minimum Wage Amendment of the Nevada Constitution, Nev. Const. art. 15, § 16, and the Nev. Rev. Stat. Chapt. 60,

28) New Hampshire: New Hampshire Minimum Wage Law, N.H. Rev. Stat. § 279:1 *et seq.*;

29) New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

30) New Mexico: New Mexico Minimum Wage Law, N.M. Stat. Ann. §50-4 *et seq.*;

31) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;

32) North Carolina: North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, *et seq.*;

33) North Dakota: North Dakota Labor and Employment Law., N.D. Cent. Code 34-01 *et seq.*, and the North Dakota Minimum Wage and Work Conditions Order N.D. Ain Code §4602-07-01 *et seq.*;

34) Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*;

35) Oklahoma: Oklahoma General Wage Law, O.S. §§40-165.1. *et seq.*;

36) Oregon: Oregon Minimum Wage Law, Oreg. Rev. Stat. §51-653, and the Oregon Rules Regulating Minimum Wage, Overtime and Working Conditions OAR 839-020-0000, *et seq.*;

37) Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;

38) Puerto Rico: Puerto Rico Working Hours and Days Laws, 29 L.P.R.A. §§271, *et seq.*;

39) Rhode Island: Rhode Island Minimum Wage Act, R.I. Gen. Laws §§ 28-12-1, et seq., and the Rhode Island Wages Act, R.I. Gen. Laws §§ 28-14-1, et seq.;

40) South Carolina: South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*;

41) South Dakota: South Dakota Labor and Employment Laws, S.D.C.L. 60-1-1, *et seq.*;

42) Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq.*;

43) Vermont: Vermont Wages and Medium of Payment Laws, 21 V.S.A. §§341, *et seq.*;

44) Virginia: Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*;

45) Washington: Washington Minimum Wage Act, R.C.W. 49.46.005, *et seq.*; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*;

46) West Virginia: West Virginia Minimum Wage and Maximum Hours Act, W. Va. Code §25-5C-1, *et seq.*;

47) Wisconsin: Wisconsin Hours of Work and Overtime Rules, Wis. Admin. Code, §§ DWD 272.01 et seq. and 274.01 *et seq.*; and

48) Wyoming: Wyoming Minimum Wages, W.S. 1977 §§27-4-201, et seq. and Collection of Unpaid Wages, §§27-4-501, *et seq.*

6.      Plaintiff CAI GUO executed an individual general release as to all claims against Defendants on March 15, 2021.  By the express terms of his agreement, excluded from the release is "any claim[] that the controlling law clearly states may not be released by private agreement." Plaintiff CAI GUO advances his FLSA claims in this action as controlling law clearly states that FLSA claims may not be released by private agreement.  The Supreme Court of the United States when interpreting "the FLSA [has] frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act." *Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 1445 (1981). The Court goes on to hold that FLSA rights cannot be waived by contract, and to allow for waiver or releases of FLSA claims would "nullify the purposes" of the statute. *Id.* Moreover, the Second Circuit itself has repeatedly reaffirmed this position. *See Bormann v. AT & T Commc'ns, Inc.*, 875 F.2d 399, 401 (2d Cir. 1989) ("[P]rivate waiver of claims under the [FLSA] has been precluded by such Supreme Court decisions as *Brook. Sav. Bank*, 324 U.S. 697, and *D.A. Schulte, Inc.*, 328 U.S. 108.").

## JURISDICTION AND VENUE

7.      Defendants are subject to personal jurisdiction in this judicial district.

8.      This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff WEI CHEN state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

10.     This Court is empowered to issue a declaratory judgement pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

11.     Plaintiff CAI GUO is a resident of Kings County, New York.

12.     Plaintiff WEI CHEN is a resident of Richmond County, New York.

13.     At all relevant times, Defendant CENTENE CORPORATION has wholly owned and managed Defendant CENTENE MANAGEMENT COMPANY LLC.

14.     At all relevant times, Defendant WELLCARE HEALTH PLANS, INC. has wholly owned and managed Defendant COMPREHENSIVE HEALTH MANAGEMENT, INC.

15.     On January 23, 2020, Defendant CENTENE CORPORATION acquired Defendant WELLCARE HEALTH PLANS, INC., and all its subsidiaries, becoming the parent corporation to all Defendants in this action.  As of January 23, 2020, Defendant CENTENE CORPORATION has wholly owned and managed Defendants CENTENE MANAGEMENT COMPANY LLC, WELLCARE HEALTH PLANS, INC., and COMPREHENSIVE HEALTH MANAGEMENT, INC.

16.     Defendant CENTENE CORPORATION is a foreign business corporation operating in New York and organized under the laws of Delaware. Its principal executive office

is located at 7700 Forsyth Blvd., St. Louis, MO 63105, and its address for service of process purposes is c/o CT Corporation System, 28 Liberty Street, New York, NY, 10005. Defendant CENTENE CORPORATION is registered to conduct business in New York.

17.     Defendant CENTENE MANAGEMENT COMPANY LLC, a wholly owned subsidiary of Defendant CENTENE CORPORATION, is a foreign business corporation operating in New York and organized under the laws of Wisconsin. Its principal executive office is located at 7700 Forsyth Blvd., St. Louis, MO 63105, and its address for service of process purposes is c/o CT Corporation System, 28 Liberty Street, New York, NY, 10005. Defendant CENTENE MANAGEMENT COMPANY LLC is registered to conduct business in New York.

18.     Defendant WELLCARE HEALTH PLANS, INC., a wholly owned subsidiary of Defendant CENTENE CORPORATION, is a foreign business corporation operating in New York and organized under the laws of Florida. Its principal executive office is located at 7700 Forsyth Blvd., St. Louis, MO 63105, and its address for service of process purposes is c/o CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

19.     Defendant COMPREHENSIVE HEALTH MANAGEMENT, INC. is a foreign business corporation operating in New York and organized under the laws of Florida. Its principal executive office is located at 7700 Forsyth Blvd, St. Louis, MO 63105, and its address for service of process purposes is c/o CT Corporation System, 28 Liberty Street, New York, NY, 10005. Defendant COMPREHENSIVE HEALTH MANAGEMENT, INC. is registered to conduct business in New York.

20.     Centene maintains offices and hires employees throughout the entire United States, including offices in the following: Alabama (1), Arizona (6), Arkansas (1), California (31), Connecticut (4), Delaware (1), Florida (20), Georgia (3), Hawaii (1), Illinois (1), Iowa (1),

Kansas (3), Kentucky (6), Louisiana (4), Maine (1), Maryland (1), Massachusetts, Michigan (2),

Minnesota (1), Mississippi (1), Missouri (4), Nebraska, Nevada (2), New Hampshire (2), New

Jersey (1), New Mexico (2), New York (5), North Carolina (4), Ohio (4), Oklahoma (1), Oregon

(1), Pennsylvania (3), Rhode Island (1), South Carolina (2), Tennessee (2), Texas (9), Vermont,

Washington (4), Wisconsin (3) (the "Centene" Offices). *See* **Exhibit B.**

21.     The Centene Offices share common central management, Human Resources team,

central payroll, and central marketing team.

a) Each Centene Office location is engaged in the same business of providing insurance sales services.

b) All the Centene Offices share the same trade name "Centene " with the same logo and are marketed jointly on one (1) common website: (https://centene.com/). See **Exhibit B**.

c) The Centene Offices within New York State are commonly owned and operated by Centene.

d) All Centene Offices share the common, corporate office address, common number, and vendor for employment verification. See **Exhibit C**.

e) Job openings of Centene Offices in multiple states were posted on the same Webpage for prospective employees to apply. See also **Exhibit D** for the "Careers" Webpage**.**

f) All Centene Offices share common social media accounts, including:  Facebook, LinkedIn, YouTube, Twitter**.**

g) All Centene Offices share a common employee handbook. *See* **Exhibit E**.

h) All Centene Offices share consolidated financials, which may be seen by Defendant WELLCARE HEALTH PLANS, INC.'s 10-k filing with the SEC dated February 12, 2019, and Defendant CENTENE CORPORATION's 10-k filing dated February 22, 2020.

22.     At all relevant times, the Defendant was and continues to be an "enterprise

engaged in commerce" within the meaning of the FLSA, applicable state law, and the regulations

thereunder.

23.     At all relevant times, the work performed by Plaintiff, Nationwide FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendant.

### NATIONWIDE FLSA COLLECTIVE ACTION ALLEGATIONS

24.     Plaintiffs bring claims for relief as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all non-managerial employees, who engaged or facilitated in the sales, consultation, enrollment and/or recertification of clients (including but not limited to all marketing sales associates, sales agents, consultant associates, benefit specialists and eligibility specialists throughout the United States) employed by Defendants on or after the date that is three (3) years before parties' tolling agreement in this matter, which was fully executed on October 25, 2021 ("Nationwide FLSA Collective Plaintiffs").

25.     At all relevant times, Plaintiffs and Nationwide FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of forty (40) hours per workweek due to a policy of time-shaving and improper overtime rates. The claims of Plaintiffs stated herein are essentially the same as those of Nationwide FLSA Collective Plaintiffs.

26.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The Nationwide FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided

to the Nationwide FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

27.   Plaintiffs WEI CHEN bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-managerial employees who engaged or facilitated in the sales, consultation, enrollment and/or recertification of clients (including but not limited to all mark marketing sales associates, sales agents, consultant associates, benefit specialists and eligibility specialists throughout the United States or individual subclasses in other states thereof) employed by Defendants in the three (3) years – or the relevant statutory period pursuant to each states applicable laws of labor, laws regarding contract, and laws of equity – before parties' tolling agreement in this matter, which was fully executed on October 25, 2021. (the "Class Period").

28.   All said persons, including Plaintiff WEI CHEN are referred to herein as the "Class" or "Class Members." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

29.   Plaintiff WEI CHEN's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of time-shaving, improper overtime rates,

failing to pay overtime compensation, failing to provide proper wage statements, and failing to provide proper wage and hour notices. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff WEI CHEN, and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

30.    To the extent necessary, Plaintiff CHEN will designate subclasses for each of the States where Defendants have employees.

31.    The Class also includes a subclass of employees who all worked for Defendants and were all subject to the same underpayment of commissions for the enrollments and sales made between the months of November 2019 to January 2020 ("Commission Subclass"). Plaintiff WEI CHEN is a member of the Commission Subclass.

32.    During the 2019-2020 open-enrollment season, Commission Subclass members were induced into working extra hours and producing extra sales by way of a fraudulently published commission structure.  Open enrollment is a period of time each year when individuals and businesses can sign up for health insurance or change health plans.  Outside of Open Enrollment, individuals and businesses can only change plans due to a life event that qualifies for a Special Enrollment Period.  As such, the open enrollment period is especially important for insurance providers for purposes of retaining and enrolling new and additional customers.  The open enrollment period takes place from the month of November through mid-January each year.

33.    The commission structure repeatedly published to Commission Subclass members prior to the 2019 open-enrollment season was intended to incentivize and induce extra work and sales from the Commission Subclass members by way of a new commission structure promising larger

commissions for employees should certain sales goals be reached. Plaintiff WEI CHEN and Commission Subclass members reached the sales goals set by Defendants. On February 14, 2020, after Commission Subclass members reached sales goals set by Defendants, Defendants WELLCARE HEALTH PLANS, INC.'s Vice President of Field Sales and Marketing stated in an email to employees "Please be assured that the miscommunication regarding commissions was purely my mistake due to our misinterpretation of the commission plan…" Defendants induced extra work, further hours, and greater sales from Plaintiff WEI CHEN and Commission Subclass members all to Defendants' benefit, but never provided Commission Subclass members the agreed upon compensation for such work and sales.

34.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class. The members of each state's potential subclass total over forty (40) as well.  Commission Subclass members also total over forty (40).

35.    Plaintiff WEI CHEN is able to fairly and adequately protect the interests of the Class, and the Commission Subclass, and have no interests antagonistic to the Class or Subclass.

36.    Plaintiff WEI CHEN is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

37.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit

against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

38.      Defendants and other employers throughout the United States violate state labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

39. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

    (a)    Whether Defendants employed Plaintiff WEI CHEN and Class Members within the meaning of the state labor laws;

    (b)    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Plaintiff WEI CHEN and Class Members properly;

    (c)    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff WEI CHEN and Class Members for their work;

    (d)    Whether Defendants properly notified Plaintiff WEI CHEN and Class Members of their pay rates;

    (e)    Whether Defendants paid Plaintiff WEI CHEN and Class Members the proper overtime compensation;

    (f)    Whether Defendants paid Plaintiff WEI CHEN and Class Members for all hours worked;

    (g)    Whether Defendants provided proper wage statements to Plaintiff WEI CHEN and Class Members;

    (h)    Whether Defendants provided proper wage and hour notices to Plaintiff WEI CHEN and Class Members;

    (i)    Whether Defendants paid proper commissions to Commission Subclass members; and

(j)     Whether Defendants properly compensated Commission Subclass members at the rate promised by Defendants.

## **STATEMENT OF FACTS**

40.     Defendants operate a healthcare enterprise that focuses on the sale of insurance to individuals and families, who are either uninsured or seeking to change healthcare insurance providers.

41.     In operating their business Defendants engaged in multiple schemes to underpay, or in many cases avoid paying, overtime hours to employees.  Plaintiffs and Class Members were all victims of Defendants inducement of off-the-clock work and of Defendants' failure to pay proper time-and-a-half overtime premiums to its employees.

42.     In maintaining its business, Defendants' central management enacted a policy of establishing and setting quotas for virtually every aspect of Defendants' business.  Such quotas for those engaged in customer support involved the number of customer issues which needed to be resolved in a day.  For those engaged in selling Defendants' insurance packages, such quotas included the number of sales, i.e., enrollments, an employee had to make each quarter.  For those employees working as eligibility specialists, such employees had quotas for the review of costumer documents to verify qualifying eligibility for various programs.

43.     Defendants' quotas were used to impermissibly induce extensive off-the-clock work by setting extreme targets that employees could not complete in a 40-hour work week.  Even as Defendants induced overtime work from employees, Defendants maintained a procedure and policy for requesting overtime, which required all employees to subject themselves to a productivity review and possible reprimand/termination.

44.     Due to company pressure to produce and because it was not possible to meet production quotas working only during their regular scheduled hours, Plaintiffs and Class Members had no choice but to engage in work activities after their scheduled hours or risk termination.   Plaintiffs and their coworkers took calls, input data, reviewed paperwork, and engaged in work after hours and off-the-clock. Defendants had full knowledge of the behavior their quotas and policies engendered as Plaintiffs and Class Members would submit completed forms and applications necessary to enrollment and/or approval during their off hours when Defendants knew their employees were not clocked in.   Although Plaintiffs and Class Members were working overtime, Defendants did not pay them for their overtime hours.

45.     Plaintiffs and Class Members off-the-clock work worsened in March of 2020. After March of 2020, employees were required to work from home due to COVID induced lockdowns.   Once Plaintiffs and Class Members were required to work from home, regional managers threatened employees against inputting hours outside their scheduled work hours without prior approval.

46.     As a consequence of this threat and as may be seen from the paystub examples provided by Plaintiffs, after March of 2020, Class Members compensable hours reflected their scheduled hours equivalently. *See id.*  Defendants were and are aware that employees are engaging in off-the-clock work in excess of their registered hours as Defendants would receive notices and time-stamps of documents, verifications, and resolution of customer issues after the supposed scheduled and recorded hours of Plaintiffs and Class Members.

47.     Moreover, on those occasions when an employee submits and is in fact paid overtime, Defendants paid the employee at an impermissibly low half-time rate. *See* **Exhibit F** and **G.** Paystubs of Plaintiff CAI GUO and WEI CHEN Showing Half-Time Overtime Rate.

Despite Plaintiff and Nationwide FLSA Plaintiffs, and Class Members' paystubs purporting to pay employees by the hour, for hours worked over forty employees paid at the proper time-and-a-half rate (1.5x), Defendants would only compensate employees at a rate of half (.5x) their base hourly pay rate.

48.    Defendants' violations may be seen clearly through their provided paystubs. *See* id. As an example, for the two weeks between February 17, 2019 and March 2, 2019, Plaintiff CAI GUO was provided two paystubs on March 8, 2019. *See id.* at P000004. Despite the fact that each paystub only covered one of the two weeks between February 17, 2019 and March 2, 2019, both purport to cover the entirety of the two-week period. *See id.* Defendants' paystubs themselves are deficient as neither identifies which of the two weeks the payment covers as needed pursuant to the FLSA and state labor laws. *See id.* The paystub also reveals Defendants' pay violation of only compensating employees at a half-time rate. *See id.* In one of the two paystubs, Plaintiff is recognized as working a total of 41.25 hours, 40 hours at a regular rate of $26.45 and 1.25 hours at a half-time rate of $12.83. *See id.* In the second paystub, Plaintiff is seen to have worked a total of 48.25 hours, 40 hours at a regular rate of $26.45 and 8.25 hours at a half-time rate of $10.96. *See id.*

49.    On the paystubs provided by Defendants, Defendants acknowledge in the "information" section that the "Basis of Pay" of Plaintiffs' pay is "Hourly[.]" *See id.*

50.    Defendants failed to pay the full time and half pay-rate despite paying hourly and having no agreement with Plaintiffs, Nationwide FLSA Plaintiffs, and Class Members that their weekly pay was meant to include all hours including overtime hours.

51.    Moreover, employees of Defendants paid on commission were also victims of what Commission Subclass members often refer to as the "Open Enrollment Scandal" occurring in 2020. During the open enrollment season of 2020, Defendants induced higher sales by

distributing emails and paperwork promising higher commission rates than were actually delivered to employees.

*Plaintiff CAI GUO Wage and Hour Claims:*

52.     On or about June 18, 2018, Defendants WELLCARE HEALTH PLANS, INC. and COMPREHENSIVE HEALTH MANAGEMENT, INC. hired Plaintiff CAI GUO to work as a marketing sales associate for Defendants' office located at 765 61st Street Brooklyn, NY 11220.  In or around February 2020, Plaintiff CAI GUO's position with Defendants changed to a benefit consultant.  Plaintiff CIAO GUO's employment with Defendants ended on March 12, 2021.   At the end of Plaintiff CAI GUO's employment, Plaintiff CAI GUO's rate of compensation was $29.06 an hour plus commissions. During his employment, he was compensated on an hourly basis.

53.     Throughout Plaintiff CAI GUO's employment, Plaintiff CAI GUO would work under one of two schedules.  Either Plaintiff CAI GUO was scheduled to work Monday through Friday, 9:00 AM to 5:00 PM with a half-hour lunch or Plaintiff CAI GUO was scheduled to work the same days with an hour lunch and an end time of 5:30 PM.  Despite this supposed schedule, Plaintiff CAI GOU always worked extra hours off-the-clock each week.

54.     In his positions, Plaintiff CAI GUO sold Defendant's private insurance plans.  To effectuate these sales, Plaintiff CAI GUO called existing and potential new clients to gather additional information that was missing from the clients' health-care applications, assisted client in filling out forms, answering all questions from clients, and even driving to clients' homes in Brooklyn and Manhattan for signatures.

55.     At all times throughout Plaintiff CAI GUO's employment, Defendants' instituted sales quotas, which salespersons like Plaintiff CAI GUO were required to meet.

56.     For Plaintiff CAI GUO to meet his production quotas, he needed to sign up at least (12) additional members per month, and during 'open enrollment,' the period between October and December of each year, Plaintiff CAI GUO was required to enroll forty-five (45) members a month.  The progress of meeting these quotas was reviewed every three months. To meet these quotas, Plaintiff CAI GUO typically worked 6-8 hours per week off-the-clock.

57.     Additionally, in or around March of 2020, Plaintiff CAI GUO began working remotely, from his home-office due to COVID restrictions.  Immediately prior to his remote working, Plaintiff CAI GOU's manager informed employees that they were not to work beyond their scheduled hours, and would be subject to productivity reviews for overtime hours logged.

58.     After March of 2020, despite working hours beyond their scheduled hours, Plaintiff CAI GOU and Class Members received paystubs reflecting their scheduled hours exactly. *See i.e.,* **Exhibit F** at P000009. Class Members' similarly received compensation and paystubs fraudulently listing working hours at their exact scheduled hours, typically exactly 75 or 80 hours, despite working significantly greater hours.

59.     Defendants were aware of Plaintiff CAI GOU's and Class Members real hours as such off-the-clock work was registered by Defendants.  During off-hours Plaintiff CAI GUO and Class Members used Defendants' cell-phones to make additional calls, emailed managers additional applications, and input into Defendants' system further sales documentation.  All of these activities were time-stamped and informed management of employees' real working hours.

60.     On those occasions where Plaintiff CAI GOU and Class Members received overtime from Defendants, Plaintiff CAI GOU and Class Members' overtime was paid at the impermissibly low half-time rate.  *See* **Exhibit F** at P000009.

*Plaintiff WEI CHEN Wage and Hour Claims*:

61.     In or about September of 2012, Defendants WELLCARE HEALTH PLANS, INC. and COMPREHENSIVE HEALTH MANAGEMENT, INC. hired Plaintiff WEI CHEN to work as a marketing sales associate for Defendants' office located at 765 61st Street Brooklyn, NY 11220.  Plaintiff WEI CHEN's employment with Defendants ended on June 28, 2021. At the end of Plaintiff WEI CHEN's employment, Plaintiff WEI CHEN's rate of compensation was $33.34 an hour plus commissions.  During his employment, he was compensated on an hourly basis.

62.     Throughout Plaintiff WEI CHEN's employment, Plaintiff WEI CHEN would work under one of two schedules.  Either Plaintiff WEI CHEN was scheduled to work Monday through Friday, 9:00 AM to 5:00 PM with a half-hour lunch or Plaintiff WEI CHEN was scheduled to work the same days with an hour lunch and an end time of 5:30 PM.  Despite this supposed schedule, Plaintiff WEI CHEN always worked extra hours off-the-clock each week.

63.     In his positions, Plaintiff WEI CHEN sold Defendant's private insurance plans. To effectuate these, sales Plaintiff WEI CHEN called existing and potential new clients to gather additional information that was missing from the clients' health-care applications, assisted client in filling out forms,  and answering all questions from clients.

64.     At all times throughout Plaintiff WEI CHEN's employment, Defendants' instituted sales quotas, which salespersons like Plaintiff WEI CHEN were required to meet.

65.     For Plaintiff WEI CHEN to meet his production quotas, he needed to sign up at least (12) additional members per month, and during 'open enrollment,' the period between October and December of each year, Plaintiff WEI CHEN was required to enroll forty-five (45)

members a month.  The progress of meeting these quotas was reviewed every three months. To meet these quotas, Plaintiff WEI CHEN typically worked 6-8 hours per week off-the-clock.

66.     Additionally, in or around March of 2020, Plaintiff WEI CHEN began working remotely, from his home-office due to COVID restrictions.  Immediately prior to his remote working, Plaintiff WEI CHEN's manager informed employees that they were not to work beyond their scheduled hours and would be subject to productivity reviews for overtime hours logged.

67.     After March of 2020, despite working hours beyond his scheduled hours, Plaintiff WEI CHEN received paystubs reflecting his scheduled hours exactly. *See* **Exhibit G** at P000037. Class Members' similarly received compensation and paystubs fraudulently listing working hours at their exact scheduled hours, typically exactly 75 or 80 hours, despite working significantly greater hours.

68.     Defendants were aware of Plaintiff WEI CHEN's and Class Members real hours as such off-the-clock work was registered by Defendants.  During off-hours Plaintiff WEI CHEN and Class Members used Defendants' cell-phones to make additional calls, emailed managers additional applications, and input into Defendants' system further sales documentation.  All of these activities were time-stamped and informed management of employees' real working hours.

69.     On those occasions where Plaintiff WEI CHEN and Class Members received overtime from Defendants, Plaintiff WEI CHEN and Class Members' overtime was paid at the impermissibly low half-time rate. *See* **Exhibit G** at P000026.

*Fraudulent Commission Payment Allegations*:

70.     Throughout 2019, Defendants published a new commission structure for the open enrollment period lasting from November 1, 2019 to January 31, 2020 ("Open Enrollment Period"). This new commission structure promised significantly higher commissions to those employees who

met certain sales metrics.

71.     Prior to the Open Enrollment Period and again throughout the Open Enrollment Period, Defendants published the expected commission for its employees.  On or around, November 19, 2019, November 26, 2019, and December 5, 2019, Defendants published expected commissions to employees and Commission Subclass members.  The repeated publications of these expected commissions were meant to induce employees into working extra hours and produce more sales.

72.     Only after successfully inducing greater hours of work and further sales, Defendants informed Commission Subclass members that Defendants would not compensate commissions based on the previously published structure.  Instead, after employees successfully generated higher than normal sales, Defendants only compensated employees at a rate significantly lower, almost half, the rate promised leading up-to and during the Open Enrollment Period.

73.     The commission structure and expected commissions repeatedly published to Commission Subclass members was intended to incentivize and induce extra work and sales from the Commission Subclass members by way of a new commission structure promising larger, almost twice the normal, commissions for employees should certain sales goals be reached.

74.     Plaintiff CHEN and Commission Subclass members reached the sales goals set by Defendants.   On February 14, 2020, after Plaintiff CHEN and Commission Subclass members reached sales goals set by Defendants, Defendant WELLCARE HEALTH PLANS, INC.'s Vice Presidents of Field Sales and Marketing began informing employees of that they would not receive commissions based on the higher commission-based structure promised by Defendants.

75.     Such Vice Presidents of Defendants included Jeff Ray, who informed Commission Subclass members via email that "Please be assured that the miscommunication regarding commissions was purely my mistake due to our misinterpretation of the commission plan…"

76.     Defendants induced extra work, further hours, and greater sales from the Commission Subclass members all to Defendants' benefit, but never provided Commission Subclass members the promised compensation for such work and sales.

*General Wage and Hour Allegations:*

77.     Similar to Plaintiffs, Nationwide FLSA Collective Plaintiffs and Class Members regularly worked over forty (40) hours per week but Defendant failed to pay them for similar off-the-clock work.

78.     Similar to Plaintiffs, Nationwide FLSA Collective Plaintiffs and Class Members regularly worked over forty (40) hours per week but Defendant failed to pay them the proper owed one-and-one-half overtime premium.

79.     Defendants knowingly and willfully operated its business with a policy of not paying either the FLSA overtime rate (of time and one-half) or the state overtime rate (of time and one-half) to Plaintiffs, Nationwide FLSA Collective Plaintiffs, and Class Members for all hours worked in excess of forty (40) hours per week by demanding off-the-clock work.

80.     Defendants knowingly and willfully operated its business with a policy of not providing wage statements to Plaintiffs, Nationwide FLSA Collective Plaintiffs and Class Members that list the accurate rates of pay and regular and overtime hours worked per week, as required by the NYLL and applicable state labor laws.

81.     Defendants knowingly and willfully operated its business with a policy of not providing wage and hour notices that list the accurate rates of pay and regular and overtime hours worked per week to Plaintiffs, Nationwide FLSA Collective Plaintiffs and Class Members, in violation of the state wage and hour law.

82.    Plaintiffs retained Lee Litigation Group, PLLC to represent themselves, Nationwide FLSA Collective Plaintiffs, and the Class Members in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### ON BEHALF OF PLAINTIFFS AND NATIONWIDE FLSA COLLECTIVE
### PLAINTIFFS

83.    Plaintiffs reallege and reaver by reference all allegations in the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

84.    At all relevant times, Defendants were and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and Nationwide FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

85.    At all relevant times, Defendants employed Plaintiffs and Nationwide FLSA Collective Plaintiffs within the meaning of the FLSA.

86.    At all relevant times, Defendants had gross annual revenues in excess of $500,000.

87.    At all relevant times, Defendants had a policy and practice of failing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and Nationwide FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

88.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by its failure to compensate Plaintiffs and Nationwide FLSA Collective

Plaintiffs at the statutory overtime premium of time and one-half for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

89.     Defendants failed to properly disclose or apprise Plaintiffs and Nationwide FLSA Collective Plaintiffs of their rights under the FLSA.

90.     As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiffs and Nationwide FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

91.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and Nationwide FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation, plus an equal amount as liquidated damages.

92.     Records, if any, concerning the number of hours worked by Plaintiffs and Nationwide FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and Nationwide FLSA Collective Plaintiffs are in the possession and custody of Defendant. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

93.     Plaintiffs and Nationwide FLSA Collective are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to the FLSA.

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW
ON BEHALF OF PLAINTIFF AND CLASS MEMBERS**

94.    Plaintiff WEI CHEN realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

95.    At all relevant times, Plaintiff WEI CHEN and New York Class Members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

96.    Defendants knowingly and willfully violated the rights of Plaintiff WEI CHEN and New York Class Members by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

97.    Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiff WEI CHEN and New York Class Members, as required by New York Labor Law § 195(1).

98.    Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff WEI CHEN and New York Class Members with every wage payment, as required by New York Labor Law § 195(3).

99.    Due to Defendants' New York Labor Law violations, Plaintiff WEI CHEN and New York Class Members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law.

**COUNT III**

**VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS**

100.    Plaintiff WEI CHEN realleges and reaver by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

101.    At all relevant times, Plaintiff WEI CHEN and Class Members were employed by Defendants within the meaning of the applicable state wage and hour laws.

102.    Defendants knowingly and willfully violated Plaintiff WEI CHEN and Class Members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

103.    Defendants knowingly and willfully failed to provide proper wage statements and notices to Plaintiff WEI CHEN and Class Members, as required under the applicable state wage and hour laws.

104.    Due to Defendants' state law violations, Plaintiff WEI CHEN and Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

**COUNT IV**

**CLASS ALLEGATIONS - BREACH OF CONTRACT**

105.    Plaintiff WEI CHEN realleges and reaver by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein

106.    Plaintiff WEI CHEN on behalf of himself and Commission Subclass members alleges that at all times material hereto, Plaintiff WEI CHEN and the Commission Subclass

27

members performed fully their contractual obligations, namely—to generate sales on behalf of Defendants pursuant to Defendants' commission structure.

107.    Defendants unfairly interfered with Plaintiff WEI CHEN and the Commission Subclass members' rights under their contract by publicizing and guaranteeing commission rates, which Defendants never delivered.

108.    As a direct and proximate result of Defendants' failure to act fairly and in good faith, Plaintiff WEI CHEN and the Commission Subclass members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**COUNT V**

**CLASS ALLEGATIONS - PROMISSORY FRAUD**

109.    Plaintiff WEI CHEN realleges and reaver by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein

110.    In order to induce Plaintiff WEI CHEN and Commission Subclass members to work extra hours and generate greater sales, Defendants affirmatively promised Plaintiff WEI CHEN and Commission Subclass members higher commission rates per sale if certain metrics were met.

111.    Defendants' representations as set forth above were false and fraudulent, the Defendants knew that the representations were false and fraudulent at the time they were made, and Defendants did not intend to honor these representations.

112.   Plaintiff WEI CHEN and Commission Subclass members were not aware of the falsity of Defendants' representations, and reasonably and actually relied on them in accepting employment with the Defendants.

113.   As a direct and proximate result of Defendants' false and fraudulent misrepresentations, Plaintiff WEI CHEN and Commission Subclass members have sustained damages in an amount according to proof at trial.

114.   Plaintiff WEI CHEN and Commission Subclass members are informed and believe, and on that basis allege, that Defendants false and fraudulent misrepresentations were done with fraud and malice and in conscious disregard of Plaintiff WEI CHEN and the Commission Subclass members' rights.

115.   Plaintiff WEI CHEN and Commission Subclass members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT VI

## CLASS ALLEGATIONS - NEGLIGENT MISREPRESENTATION

116.   Plaintiff WEI CHEN realleges and reaver by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein

117.   In order to induce Plaintiff WEI CHEN and Commission Subclass members to work extra hours and generate greater sales, Defendants affirmatively promised Plaintiff WEI CHEN and Commission Subclass members: that Plaintiff WEI CHEN and Commission Subclass members would be paid commissions at a certain rate.

118.    Defendants' representations as set forth above were false, were false at the time the agreements were made, and Defendants made these misrepresentations without reasonable ground for believing them to be true when made.

119.    Plaintiff WEI CHEN and Commission Subclass members were not aware of the falsity of Defendants' representations, and reasonably and actually relied on them in accepting employment with the Defendants.

120.    As a direct and proximate result of Defendants' false misrepresentations, Plaintiff WEI CHEN and Commission Subclass members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT VII

## CLASS ALLEGATIONS - UNJUST ENRICHMENT

121.    Plaintiff WEI CHEN realleges and reaver by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

122.    By virtue of Defendants' conduct as alleged herein, and Plaintiff WEI CHEN and Commission Subclass members' performance, Defendants were unjustly enriched by the Plaintiff WEI CHEN and Commission Subclass members' conduct and did not compensate Plaintiff WEI CHEN and Commission Subclass members fully.

123.    The circumstances are such that it would be inequitable to allow Defendants to retain the excess benefit from Plaintiff WEI CHEN and Commission Subclass members conduct without paying fair value for it.

124.    As a direct and proximate result of Defendants wrongful withholding of funds collected that should have been paid to Plaintiff WEI CHEN and Commission Subclass members, Plaintiff WEI CHEN and Commission Subclass members have sustained damages in an amount according to proof at trial.

125.    Defendants' withholding of proper compensation from employees was done with malice and in conscious disregard of Plaintiff WEI CHEN and Commission Subclass members rights, with the intent to cause injury to Plaintiff WEI CHEN and Commission Subclass members. Plaintiff WEI CHEN and Commission Subclass members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, Nationwide FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the applicable state laws;

b.    An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid wages and overtime compensation due under the FLSA and the applicable state laws;

d.    An award of statutory penalties as a result of Defendant's failure to comply with the wage notice and wage statement requirements under the applicable state laws;

e.    An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay wages and overtime compensation, pursuant to the FLSA and/or and the applicable state laws;

f.    An award for damages as a result of Defendants breach of contract, promissory fraud, negligent misrepresentation;

g.    An Award for disgorgement as a result of Defendants unjust enrichment;

h.    An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.    Designation of Plaintiffs as Representative of the Nationwide FLSA Collective Plaintiffs;

j.    Designation of this action as a class action pursuant to F.R.C.P. 23;

k.    Designation of Plaintiff CHEN as Representatives of the Class;

l.    Designation of Plaintiff CHEN as Representatives of the Commission Subclass; and

m.    Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:    March 2, 2022                    Respectfully submitted,

By:       ___*s/ C.K. Lee*___
          C.K. Lee, Esq.

          LEE LITIGATION GROUP, PLLC
          C.K. Lee (CL 4086)
          Anne Seelig (AS 3976)
          148 West 24th Street, Eighth Floor
          New York, NY 10011
          Tel.: 212-465-1188
          Fax: 212-465-1181
          *Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
          *and the Class*